# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MELODY F. HENRY,[1]
    Plaintiff,

       vs.

JANET YELLEN, SECRETARY,
DEPARTMENT OF THE TREASURY
    Defendant.

Case No. 1:21-cv-31
Hopkins, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action against defendant Janet Yellen, Secretary of the Department of

Treasury, alleging employment discrimination under Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e *et seq.* This matter is before the Court on defendant's motion for summary

judgment (Doc. 58), plaintiff's response in opposition (Doc. 67), and defendant's reply (Doc.

71).

    A.    <u>Procedural history</u>

Plaintiff filed this federal lawsuit on January 14, 2021. (Doc. 1). In it, plaintiff alleges

that she contacted an Equal Employment Opportunity (EEO) Commission (EEOC) counselor or

filed a charge of discrimination on June 15, 2018. (Doc. 1 at PAGEID 5).[2] Plaintiff checked

boxes on her complaint form for this lawsuit indicating that was based on failure to promote and

retaliation tied to race and color discrimination. (*Id.* at PAGEID 4). In plaintiff's EEO

complaint, attached to her complaint here, she alleged four discrete discriminatory actions:

    1.    April 24, 2018: Plaintiff received a lower than expected rating on her performance
appraisal from her manager, Melissa Whelan.

---

[1] Plaintiff's response in opposition is captioned "Melody F. Davis, FKA Melody F. Henry." (Doc. 67 at PAGEID 1074).

[2] This is consistent with the date adopted in the administrative agency's decision (*see* Doc. 50-5 at PAGEID 893, ¶ 11), though plaintiff's EEOC complaint lists the initial date of contact as June 19, 2018 (*see* Doc. 1 at PAGEID 9).

2.      May 24, 2018: Plaintiff was not selected for Vacancy Announcement 18-CS2-TEM0351-0512-05-LB (Vacancy 1).

3.      June 18, 2018: Plaintiff was not selected for Vacancy Announcement 18CE1-TEM0237-0512-04-LA (Vacancy 2), or Vacancy Announcement 18CE1-TEM0239-0512-04-JD (Vacancy 3).

4.      June 18-22, 2019: Plaintiff was subjected to harassment during a training session.

(*See id.* at PAGEID 8).  For each alleged discriminatory action, plaintiff states she believes it was "retaliation as a result of [her] prior EEOC complaints."  (*Id.*).

On July 6, 2021, defendant moved for partial dismissal of plaintiff's claims.  (Doc. 17).  Defendant argued that (1) plaintiff made no allegation in her underlying EEO complaint of race or color discrimination, and (2) plaintiff did not timely present her EEO claims related to the April 24, 2018 performance appraisal or Vacancy 2.  (*See id.*).  Plaintiff did not respond, and the undersigned issued an Order to Show Cause why the Court should not dismiss the claims contemplated in defendant's motion.  (*See* Doc. 22).  Plaintiff did not respond to that Order, and the undersigned recommended dismissal of plaintiff's race and color discrimination claims and her retaliation claims related to her appraisal and failure to promote for Vacancy 2.  (Doc. 23 at PAGEID 184).  The District Judge adopted the recommendation and dismissed those claims with prejudice.  (Doc. 24).  Given the foregoing, the Court considers defendant's instant motion for summary judgment only as to the remaining claims: (1) failure to promote to Vacancy 1 in retaliation for prior EEO activity, (2) failure to promote to Vacancy 3 in retaliation for prior EEO activity, and (3) harassment in retaliation for prior EEO activity.

B.      Factual background

Pursuant to Judge Hopkins' Standing Order Governing Civil Cases, § II.F.6.b, defendant submitted a statement of undisputed material facts in support of its motion (Doc. 58-1), to which

plaintiff responded and proposed disputed issues of material fact (Doc. 67-1). The following is derived from the points of agreement between those documents, unless otherwise noted.

Plaintiff is employed with the Internal Revenue Service (IRS) as a GS-512-13 Revenue Agent (Senior Employee Plans Agent) for the IRS's Tax Exempt and Government Entities division (TE/GE). Three groups fall under the TE/GE division: Employee Plans (EP), Exempt Organizations (EO), and Government Entities (GE).[3]

Since mid-2011 (*see* Pl.'s Dep., Doc. 47-1 at PAGEID 253, 31:13-18; Pl.'s EEO Aff., Doc. 47-3 at PAGEID 405), plaintiff's first line supervisor was Melissa Whelan. Plaintiff filed 3 EEO discrimination complaints in 2010, 2011, and 2014—all of which were resolved as of June 11, 2014. Ryan McDonald, plaintiff's manager prior to Whelan (*see* Pl.'s Dep., Doc. 47-1 at PAGEID 322-23, 100:22-101:1; McDonald EEO Aff., Doc. 57-5 at PAGEID 1008), and Jennifer Lee Frederick, an area manager who worked in plaintiff's same function (*see* Frederick EEO Aff., Doc. 57-3 at PAGEID 980), both knew about this prior EEO activity. (*See* McDonald EEO Aff., Doc. 57-5 at PAGEID 1008, 1010). In her EEO affidavit, plaintiff stated that Whelan "acknowledged her awareness of the prior protected activity when I was moved into her group on June 6, 2011." (Doc. 47-3 at PAGEID 405). (*See also* Whelan EEO Aff., Doc. 50-1 at PAGEID 658).

In March 2018 (*see* Doc. 47-3 at PAGEID 406), plaintiff applied for Vacancy 1. Vacancy 1 was for Supervisory Revenue Agent positions in EO. (*See* Doc. 47-9 at PAGEID 596, Vacancy 1 announcement ("SUPERVISORY INTERNAL REVENUE AGENT . . . (TEMP NTE 1 YEAR; MAY BE EXTENDED)")). Daniel Dragoo, an Area Manager, ranked the candidates for Vacancy

---

[3] EP ensures return compliance related to qualified pension benefit plans, EO ensures compliance by non-profit organizations with tax-exempt status requirements, and GE ensures compliance by government entities with tax withholding and employment tax payment requirements.

3

1.[4]  Dragoo, Jon Waddell and Jason Kall interviewed candidates for Vacancy 1.[5]  This interview panel recommended Jeffrey Gaunce and Shawn Lawson for the positions under Vacancy 1. Stephen Martin then selected Gaunce and Lawson for the positions under Vacancy 1.  The chart below demonstrates the respective qualifications of plaintiff and the selectees for the Vacancy 1 positions.

| VACANCY 1 | | | |
|---|---|---|---|
| | **Plaintiff** | **Gaunce** | **Lawson** |
| **Ranking** | Highly Qualified | Best Qualified | Best Qualified |
| **EO experience** | Completed a 120-day detail to EO (*see* Pl.'s Dep., Doc. 47-1 at PAGEID 274-77, 52:13-53:3, 54:17-55:3), no subject matter experience in EO | 10 years EO Revenue Agent | Experienced EO Revenue Agent |
| **GS level** | GS-13 | GS 13 equivalent | GS 13 equivalent |
| **Management experience** | No external management experience, less than one year of acting manager details | 15 year private sector management experience; 6 months at the IRS | 10 years external management experience, 120-day acting manager detail at EO |
| **Other** | Certified Classroom Instructor (completed Certified Classroom Instructor Program), certified Frontline Manager (completed Frontline Leadership Readiness Program) (*see* Pl.'s EEO Aff., Doc. 47-3 at PAGEID 409-10) | Served as a training coordinator for EO employees, worked as an on-the-job instructor, trained revenue agents, mentored Revenue Agents, produced an improving processes report, presented to the TE/GE Commissioner and Deputy Commissioner, and made technical presentations | Coordinated and conducted CPE training, served as an on-the-job instructor, conducted five Saba[6] instructor meetings, managed a technical correspondence mailbox, and prepared a technical briefing for the EO director |

---

[4] Candidates may be ranked Best Qualified, Highly Qualified, and Qualified.
[5] Although plaintiff admits this in her response to defendant's statement of undisputed material facts, at the time of her testimony, she recalled that the interview panel consisted of Waddell, Kall, and William Angner.  (*See* Doc. 47-1 at PAGEID 272-73, 50:24-51:13; Doc. 47-3 at PAGEID 407).
[6] In plaintiff's deposition, she indicates that this is a program for virtual trainings.  (Doc. 47-1 at PAGEID 269, 47:17-21).

In December 2017 (*see* Pl.'s EEO Aff., Doc. 47-3 at PAGEID 413), plaintiff applied for Vacancy 3, which was also for a Supervisor Revenue Agent position in EO.  (*See* Doc. 47-12 at PAGEID 615, Vacancy 3 announcement ("SUPERVISORY INTERNAL REVENUE AGENT . . . (EXEMPT ORGANIZATIONS GROUP MANAGER)")).  Kall ranked the candidates for Vacancy 3.  The interview panel consisted of Waddell, Dragoo, and Martin; but plaintiff was not ranked (*see* Ex. 9 to Pl.'s Dep., Applicant Listing, Doc. 47-11 at PAGEID 614), and she was not referred for an interview.  Martin ultimately selected Stephen Seok for Vacancy 3.  The chart below demonstrates the respective qualifications of plaintiff versus the selectee for Vacancy 3.

| Vacancy 3 | | |
|---|---|---|
| | **Plaintiff** | **Seok** |
| **Ranking** | Not ranked | Best Qualified |
| **EO experience** | Completed a 120-day detail to EO (*see* Pl.'s Dep., Doc. 47-1 at PAGEID 274-77, 52:13-53:3, 54:17-55:3), no subject matter experience in EO | Three years as a Revenue Agent; four years as a manager; complex tax law experience |
| **GS level** | GS-13 | GS 13 Revenue Agent with EO; G14 manager with the Disclosure department |
| **Management experience** | No external management experience, less than one year of acting manager details | Four years with EO; one and a half years with the Disclosure department |
| **Other** | Certified Classroom Instructor (completed Certified Classroom Instructor Program), certified Frontline Manager (completed Frontline Leadership Readiness Program) (*see* Pl.'s EEO Aff., Doc. 47-3 at PAGEID | Completion of a number of leadership training courses, teaching experience in political organizations under IRS Code 527 (credit counseling, downpayment assistance, and foreclosure intervention |

| | 416-17) | cases), conducted presentations and workshops for newly hired Revenue Agents on tax law and procedures for 501(c)(3) foundations, and received Special Act Awards and appreciation letters |
|---|---|---|

The parties dispute whether Whelan, McDonald, and Frederick shared their knowledge of plaintiff's prior EEO activity with Dragoo, Waddell, and Kall prior to the ranking, interviewing, and selections for Vacancies 1 and 3. Plaintiff relies on her EEO affidavit, where she states: "[s]ome managers share close personal relationships among some of the other managers and some subordinates at the Cincinnati office. These and other matters are discussed between selected managers and subordinates in the Cincinnati offices allowing for an[] environment of collusion." (Doc. 47-3 at PAGEID 405).[7] Defendant relies on the affidavits of Dragoo, Waddell, and Kall, in which they state that they had no knowledge of plaintiff's prior EEO activity. (*See* Dragoo EEO Aff., Doc. 57-1 at PAGEID 946-47, 958; Kall EEO Aff., Doc. 57-2 at PAGEID 962-63; and Waddell EEO Aff., Doc. 57-4 at PAGEID 988). Defendant admits that Martin knew plaintiff had "filed grievances previously in EP." (Martin EEOC Aff., Doc. 57-6 at PAGEID 1014).

Between June 18 and 22, 2018, plaintiff attended a Reporting Compliance Case Management System (RCCMS) training class. During this time, plaintiff alleges that her coworkers' conversations were very loud and distracting. Plaintiff alleges that one coworker (Christi) was using speakers instead of headphones to listen to the presentation, which was distracting. When a manager (Frederick) subsequently asked Christi to use headphones instead

of speakers, Christi had an outburst and blamed plaintiff for the interference. Plaintiff alleges that her coworkers ridiculed her for being from West Virginia. Plaintiff alleges that three coworkers appeared near where she caught the bus, though she had never seen them in that area before in the prior two years. None of the RCCMS attendees were aware of plaintiff's prior EEOC activity.

Plaintiff also alleges various incidents of harassment going back to 2010. Plaintiff alleges that McDonald, her manager prior to Whelan, downgraded her work, gave her bad reviews, and took her off of Flexi-Place (a work-from-home program). (*See* Pl.'s Dep., Doc. 47-1 at PAGEID 261, 39:14-19). These incidents were the subject of a 2011 EEO complaint, which settled. (*Id.* at PAGEID 261-62, 39:7-40:3). Plaintiff alleges that she was unfairly made the subject of a felony complaint related to her disclosure of taxpayer data in connection with one of her prior EEO complaints. (*Id.* at PAGEID 250-52, 28:15-30:10; PAGEID 263-67, 41:7-45:10). Plaintiff alleges that her computer was wiretapped and her work product sabotaged. (*Id.* at PAGEID 267-68, 45:15-46:4; PAGEID 300-03, 78:15-81:18; PAGEID 328, 106:20). This was the subject of a third EEO complaint in 2014. (*Id.* at PAGEID 270, 48:9-16). Plaintiff alleges that she was shunned by colleagues based on her superiors' instructions to not associate with her and the fact that she was seated in a remote corner of the office. (*See id.* at PAGEID 321-25, 99:19-103:13). Finally, plaintiff alleges that she was denied collateral duties and management opportunities. (*See* Pl.'s EEO Aff., Doc. 47-3 at PAGEID 408-09, 415-16).

C.    Summary judgment standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled

---

[7] Plaintiff also refers to "[c]ollusion that span[s] across business division[s] amongst management in Cincinnati."

to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A grant of

summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed

material facts by 'citing to particular parts of materials in the record . . . or . . .  showing that the

materials cited do not establish the absence . . . of a genuine dispute.'"  *United Specialty Ins. Co.*

*v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)).  The

Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable

to the non-moving party.  *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters.*, *Inc. v.*

*OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the

matter, but to determine whether there is a genuine factual issue for trial.  *Anderson*, 477 U.S. at

249.  The trial court need not search the entire record for material issues of fact, *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587.  "When

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so

that no reasonable jury could believe it, a court should not adopt that version of the facts for

purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380

(2007).  However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to

---

(*Id.* at PAGEID 407, 412, 415).

8

an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd,* No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

D.   Analysis

Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII]. . . ." 42 U.S.C. § 2000e-3(a). In a case where there is no direct evidence of retaliation, as here, the Court examines the claim using the *McDonnell Douglas/Burdine*[8] evidentiary framework. *Imwalle v. Reliance Med. Prod.*,

---

[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248 (1981).

*Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) (citing *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)).  For the prima facie case under that framework, plaintiff has the initial burden to show that (1) she engaged in protected activity; (2) her exercise of that activity was known by defendant; (3) defendant thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the materially adverse action. *Id.*  Once plaintiff presents evidence sufficient to make out the prima facie case, the burden shifts to defendant "to produce evidence of a legitimate, nondiscriminatory reason for its actions. . . ." *Id.*  If defendant meets this burden, the burden returns to plaintiff to "demonstrate by a preponderance of the evidence that the legitimate reason offered by . . . defendant was not its true reason, but instead was a pretext designed to mask retaliation."  *Id.*

      1.   *Vacancies 1 and 3*

With respect to both Vacancies 1 and 3, defendant concedes that plaintiff satisfies elements one and three of the prima facie case but disputes elements two and four.  The Court therefore begins with element two: defendant's knowledge of plaintiff's protected activity.

For Vacancy 1, Dragoo ranked plaintiff's applicant package; Dragoo, Waddell, and Kall interviewed plaintiff; and Martin did not select plaintiff.  For Vacancy 3, Kall ranked applicant packages, and because plaintiff was not ranked, she was not interviewed by Waddell, Dragoo, and Martin.  Martin again did not select plaintiff.

Dragoo, Waddell, and Kall each stated in their EEOC affidavits that they did not know of plaintiff's prior EEO activity.  (*See* Dragoo EEOC Aff., Doc. 57-1 at PAGEID 946-47, 958; Kall EEOC Aff., Doc. 57-2 at PAGEID 962-63; and Waddell Aff., Doc. 57-4 at PAGEID 988).  The only rebuttal evidence plaintiff presents is her own EEOC affidavit, in which she states that "[s]ome managers share close personal relationships among some of the other managers and some subordinates at the Cincinnati office.  These and other matters are discussed between

selected managers and subordinates in the Cincinnati offices allowing for an[] environment of collusion." (Doc. 47-3 at PAGEID 405; *see also id.* at PAGEID 407, 412, 415 (general allegations of collusion)).

As it pertains to Dragoo, Waddell, and Kall, the Court is unable to conclude that plaintiff has presented evidence from which a "rational trier of fact" could find in her favor on element two. *Matsushita Elect. Indus. Co.*, 475 U.S. at 587. "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (quoting *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)). To constitute competent summary judgment evidence, an affidavit "must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). Plaintiff's conclusory and speculative statements regarding the behavior of unnamed Cincinnati area managers—without reference to specific managers or specific conduct and unsupported by any other evidence—do not raise a genuine issue of material fact regarding Dragoo, Waddell, and Kall's knowledge of her prior EEO activity when filling Vacancies 1 and 3.

The picture is less clear with respect to Martin.[9] In its opening brief, defendant states that Martin knew of plaintiff's prior EEO activity. (*See* Doc. 58 at PAGEID 1040 and 1041 n.1). But the portion of Martin's EEOC affidavit on which defendant relies for that statement says the following: "Were you aware of [plaintiff] being involved in protected activity prior to this complaint? . . . [Martin's Answer]: Yes, *in that I understood she'd filed grievances previously*.

---

[9] Plaintiff was lower ranked than the other Vacancy 1 applicants and not ranked at all for Vacancy 3. It was employees without knowledge of plaintiff's prior EEO activity (Dragoo and Kall) that ranked applicants for Vacancies 1 and 3. The rankings arguably prohibited plaintiff from being selected, and it would be reasonable to conclude that these rankings were an "intervening cause between the protected activity and . . . adverse action" that "dispels any inference of causation" between plaintiff's prior EEO activity and her non-selection by Martin. *Jones v. Vilsack*, 861 F. App'x 58, 61 (6th Cir. 2021). Regardless, even if Martin's knowledge is relevant, the Court finds evidence on the causation element lacking for the reasons discussed *infra*.

I provided [plaintiff] some feedback on the application process. At that time, she indicated she'd filed grievances previously. . . ." (Martin EEO Aff., Doc. 57-6 at PAGEID 1014 (emphasis added)). In his reply, defendant qualifies its previous admission, noting that "[g]rievances are different from EEO complaints, and grievances do not necessarily contain allegations of discrimination." (Doc. 71 at PAGEID 1125).

Thus, the question is whether Martin's knowledge of plaintiff's prior grievances is sufficient to raise a genuine issue of material fact that Martin had knowledge of plaintiff's prior protected activity for purposes of the second element of these retaliation claims. On its face, the statement in Martin's affidavit does not demonstrate that Martin knew that plaintiff had engaged in prior protected activity. The Sixth Circuit has held that "general 'complaints to management' do not constitute protected activity" when they make no reference to discriminatory conduct based on membership in a protected class. *Jenkins v. Regents of Univ. of Michigan Health Sys.*, 763 F. App'x 545, 552 (6th Cir. 2019) (quoting *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 511 (6th Cir. 2016) (quotations and citations omitted)). On summary judgment, however, the Court must draw all reasonable inferences in the non-moving party's favor. *Satterfield*, 295 F.3d at 615. A jury could reasonably infer that, during an admitted conversation about prior grievances, plaintiff communicated to Martin the nature of those grievances. Thus, the Court finds that plaintiff has raised a genuine issue of material fact as to whether defendant knew of her prior protected activity when it did not promote her to Vacancy 1 or 3.

This leaves element four of the prima facie case: whether there is evidence sufficient to create an issue of material fact as to whether there was a causal connection between plaintiff's prior protected EEO activity and her non-selection for Vacancies 1 and 3. Plaintiff's three prior EEOC discrimination complaints were all resolved as of June 11, 2014. Plaintiff applied for

Vacancies 1 and 3 nearly four years later.[10] "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 305-06 (6th Cir. 2012) (quoting *Mickey v. Zeidler Tool & Die Co*., 516 F.3d 516, 525 (6th Cir. 2008)). However, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id*. at 306 (quoting *Mickey*, 516 F.3d at 525).

The four year time gap between plaintiff's EEO activity and her Vacancy 1 and 3 applications is well beyond the proximity of six months or less that is generally sufficient to support an inference of causation. *See Imwalle*, 515 F.3d at 550. Therefore, plaintiff must present other evidence of retaliatory conduct to support the causation element of her prima facie case.

Plaintiff points to her testimony that her work laptop was hacked and surveilled and her work product sabotaged. (Pl.'s EEO Aff., Doc. 47-3 at PAGEID 408-09, 415-16; Pl.'s Dep., Doc. 47-1 at PAGEID 267-68, 45:15-46:4; PAGEID 300-03, 78:15-81:18; PAGEID 328, 106:20). These conclusory allegations are not evidence on which a reasonable jury could find in her favor. Plaintiff offers no evidence, for instance, that an investigation *found evidence* of such hacking or surveillance, and plaintiff does not identify any particular person—let alone defendant—responsible for the alleged sabotage of her work product. Plaintiff also points to her

---

[10] The prior EEO activity alleged to have caused the retaliation occurred in 2010, 2011, and 2014. (Pl.'s Dep., Doc. 47-1, PAGEID 258, 36:11-21). The administrative decision referenced by both parties also defines plaintiff's prior EEO activity as consisting of the 2010, 2011, and 2014 EEO discrimination complaints. (*See* Doc. 50-5 at PAGEID 893).

testimony that another employee told her that there was a general directive to shun her and that she was placed in an isolated corner office. (*See* Pl.'s Dep., Doc. 47-1 at PAGEID 321-25, 99:19-103:13). To the extent that plaintiff testifies that another employee told her that *another employee(s)* issued this directive (*see id.* at PAGEID 321-22, 99:19-100:15), it is inadmissible hearsay. *See* Fed. R. Evid. 801(c) (hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) the party offers in evidence to prove the truth of the matter asserted in the statement."). And plaintiff's temporary placement in one part of an office, in and of itself, does not support an inference that she was shunned for her prior EEO activity.[11]

Plaintiff asserts that formal disciplinary action (involving defendant's false accusations of felony conduct) was taken against her after she filed her 2010 EEO complaint. (*See* Doc. 47-1 at PAGEID 250-52, 28:15-30:10; PAGEID 263-67, 41:7-45:10). Plaintiff also references declining reviews and the revoking of her Flexi-Place privileges. (*See id.* at PAGEID 261, 39:14-19). These actions took place shortly after her prior EEO activity (around 2010 or 2011). Plaintiff does not, however, allege other discrete instances of unfavorable treatment taking place between 2010-2011 and her 2018 non-selections giving rise to an inference of retaliatory treatment. Plaintiff also asserts generally that she was denied management and senior agent opportunities but offers no factual detail to support these allegations. (Pl.'s EEO Aff., Doc. 47-3 at PAGEID 409, 416).[12]

---

[11] Neither in her EEO Affidavit nor her deposition does plaintiff say exactly when/for how long she was placed in the isolated position in the office.
[12] In fact, in her deposition, plaintiff testified:

> Q. Did anything happen between 2014 and 2018 when you applied for the supervisory positions and were denied? Or not selected?
>
> A. I don't know what you mean, did anything happen.

In more recent circumstantial evidence, plaintiff's EEO complaint references an April 14, 2018 performance appraisal from Whelan that was lower than plaintiff expected (4.8 vs. 5.0). (*See* Pl.'s EEO Compl., Doc. 1 at PAGEID 8). This lone, unexpected[13] review by Whelan, who had known about plaintiff's prior EEO activity and been her manager since 2011, does not give rise to an inference that Whelan retaliated on that basis for the first time in 2018. Plaintiff also refers to the alleged harassment and ridicule at the 2018 RCCMS training. Plaintiff admits, however, that none of her coworkers at this training knew about her prior EEO activity. (*See* Doc. 58-1 at PAGEID 1058; Doc. 67-1 at PAGEID 1101).[14] In her deposition, after describing the allegations related to the RCCMS training, plaintiff explained why she believed she was harassed:

> A. Because they were angry because they didn't want to do exams. Because that's, they were angry because they didn't want to do exams. They were angry at me because I advocated for it. They were angry with, they were angry. They were Angry. Management was angry.
>
> Q. About what?
>
> A. Because we were, we had to do exams and it was my fault.

(Doc. 47-1 at PAGEID 310, 88:1-9). In other words, plaintiff's co-workers did not agree with her professional decisions. When pressed on what her co-workers' resulting anger had to do

---

Q. Was there any complaint filed by you or anything that IRS management did . . .

A. Between . . .

Q. . . . to you between 2014 and 2018?

A. Twenty fourteen and 2018, I don't remember other than the fact that I was having a lot of computer problems. But I don't remember.

(Doc. 47-1 at PAGEID 271, 49:12-23).

[13] The Court has virtually no information from which to reasonably infer that 4.8 was a negative review or inconsistent with plaintiff's performance.

[14] In her EEO affidavit, plaintiff states that Frederick and Whelan, both of whom knew about her prior EEO activity, were at the training and witnessed the outburst (directed in part toward plaintiff) by Christi after she was told to use headphones in lieu of speakers for the RCCMS training. (Doc. 47-3 at PAGEID 418, 420).

with her prior EEO activity, plaintiff stated: "Because I'm a troublemaker. . . . [T]his all stemmed, this all happened because of the first EE, it's like a domino. . . ." (*Id.* at 88:10-18). This response does little to explain the alleged causal connection between plaintiff's prior EEO activity and the behavior of her coworkers at the RCCMS training; it appears based solely on plaintiff's subjective perception.

There is neither a sufficient temporal connection between plaintiff's prior EEO activity and the non-selections for Vacancies 1 and 3 nor other circumstantial evidence that would allow a reasonable juror to conclude that plaintiff meets the causation element of her prima facie case for these claims.

Even if plaintiff met her prima facie burden, however, her retaliation claims related to Vacancies 1 and 3 would nevertheless fail because she has not raised a genuine issue of material fact that defendant's reasons for its selections for Vacancies 1 and 3 were a pretext for discrimination. Defendant has proffered evidence of its non-discriminatory reason for its selection of other candidates for Vacancies 1 and 3. (*See* Dragoo EEO Aff., Doc. 57-1 at PAGEID 949-51, 957-58; Kall EEO Aff., Doc. 57-2 at PAGEID 965-67; Waddell EEO Aff., Doc. 57-4 at PAGEID 991-92, 1000-01; Martin EEO Aff., Doc. 57-6 at PAGEID 1017-18, 1021-22, 1024-25 (explaining that the selectees were higher ranked, better qualified and/or had more EO experience than plaintiff)). As such, the burden would return to plaintiff to demonstrate that these reasons were pretextual by showing that the proffered reasons "(1) ha[ve] no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) w[ere] insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

16

For purposes of the first method of demonstrating pretext, plaintiff proffers the following statements from her EEO affidavit to demonstrate that she was more qualified than the selectees for Vacancies 1 and 3:

1. She has 20 years of technical experience and 11 years of Frontline Management experience.

2. She was certified as a Frontline Manager, unlike the selectees.

3. She served on two long-term and high-profile select projects, unlike the selectees.

4. She was certified as a Classroom Instructor, unlike the selectees.

5. She completed a Frontline Leadership Readiness Program (FLRP), unlike the selectees.

6. Candidates that receive FLRP training are supposed to receive priority placement.

(*See* Doc. 67 at PAGEID 1084-85, citing Pl.'s EEO Aff., Doc. 47-3 at PAGEID 409; *see also* Doc. 47-3 at PAGEID 414).

When relying on evidence directed to the relative qualifications of the candidates for a position, a plaintiff must present evidence showing "either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the [promoted employee] over the [plaintiff], or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination." *Provenzano v. LCI Holdings, Inc*., 663 F.3d 806, 815 (6th Cir. 2011) (quoting *Bartlett v. Gates*, 421 F. App'x 485, 490-91 (6th Cir. 2010)) (internal quotation marks omitted). Plaintiff has failed to raise a triable issue of fact on either showing.

First, plaintiff's "subjective view of her qualifications in relation to those of the other applicants, without more, cannot sustain a claim of discrimination." *Hedrick v. Western Reserve Care Sys*., 355 F.3d 444, 462 (6th Cir. 2004). Second, plaintiff has not presented evidence showing her qualifications were plainly superior to those of the selectees such that a reasonable

17

juror could infer pretext. *Provenzano*, 663 F.3d at 815. Plaintiff has admitted the following in defendant's statement of undisputed material facts regarding Vacancies 1 and 3:

1. She completed less than one year of acting manager details.

2. She had no external management experience.

3. She is less experienced in EO than the selectees for Vacancies 1 and 3.

4. She did not have subject matter experience in EO.

(*See* Doc. 58-1 at PAGEID 1053,1056-57; Doc. 67-1 at PAGEID 1098, 1100-01). Plaintiff also admitted in her deposition that FLRP training was not a requirement for a supervisory revenue agent position. (Doc. 47-1 at PAGEID 276, 54:9-16). Under these circumstances, no reasonable juror could find plaintiff's qualification were "plainly superior" to the applicants selected to reasonably infer pretext.

Even if plaintiff were as qualified as—or better qualified than—those selected for the promotions, plaintiff does not present evidence creating an issue of fact on pretext. *See Provenzano*, 663 F.3d at 815. This showing implicates the second method of proving pretext, where a plaintiff "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate [the adverse action]" but "attempts to indict the credibility of [the] employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." *Johnson*, 319 F.3d at 866 (quoting *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)). Plaintiff seems to rely on circumstantial evidence discussed above in connection with the causation element of the prima facie case (e.g., work product sabotage, declining review and work privilege, etc.). *See Provenzano*, 663 F.3d at 815 ("Relative qualifications establish triable issues of fact as to pretext where the evidence shows that . . . plaintiff was as qualified as if not

better qualified than the successful applicant, and the record contains other probative evidence of discrimination.") (quoting *Bartlett*, 421 F. App'x at 490-91) (internal quotation marks omitted). These allegations, however, are insufficient to demonstrate pretext for the same reasons they were insufficient to show causation. A reasonable juror could not conclude that the "sheer weight" of the circumstantial evidence presented by plaintiff makes it more likely that defendant's explanation is a pretext for retaliation than not. *Manzer*, 29 F.3d at 1084.

Finally, plaintiff does not appear to rely on the third method of proving pretext, which generally "consists of evidence that other employees" did not suffer adverse action under "substantially identical" circumstances "to that which the employer contends motivated its [adverse action]." *Id.* at 1084. Plaintiff offers no evidence of other employees with similar qualifications to hers (i.e, those with no subject matter experience in EO and no significant management experience) who were selected for similar EO vacancies.

For the foregoing reasons, the Court recommends that defendant's motion for summary judgment be granted on plaintiff's retaliation claims related to Vacancies 1 and 3.

## 2. *Retaliatory harassment*

Plaintiff may also make out the prima facie case for retaliation by showing that—instead of adverse action—she was subjected to "severe or pervasive retaliatory harassment by a supervisor" that was caused by her protected activity. *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000). "To establish that an employer's conduct constitutes severe or pervasive retaliatory harassment, the plaintiff must show that 'the workplace is permeated with discrimination, intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment. . . .'" *Ceckitti v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 14 F. App'x 512, 516 (6th Cir. 2001) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In making that determination, courts consider "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23). Teasing and "isolated incidents (unless extremely serious)" will not suffice to demonstrate severe or pervasive harassment. *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). The analysis has both objective and subjective components: i.e., "whether a reasonable person in plaintiff's position would find that the conduct at issue constitutes severe or pervasive hostile retaliation *and* whether [] plaintiff subjectively perceived the employer's actions to be severe or pervasive retaliation." *Id.* at 517.

Plaintiff relies primarily for this claim on her experiences during a week-long RCCMS training class between June 18 and 22, 2018. As noted above, plaintiff alleges that her coworkers' conversations were very loud and distracting. Plaintiff alleges that one coworker (Christi) was using speakers instead of headphones to listen to the presentation, which was distracting. When a manager subsequently asked Christi to use headphones instead of speakers, Christi had an outburst and blamed plaintiff for the interference. Plaintiff alleges that her coworkers ridiculed her for being from West Virginia. Plaintiff alleges that three coworkers appeared near where she caught the bus, though she had never seen them in that area before in the prior two years.

Considered from the perspective of a reasonable person, the events described between June 18-22, 2018 are no more than unactionable "ordinary tribulations of the workplace." *Id.* at 518 (quoting *Faragher*, 524 U.S. at 788). From an objective standpoint, the single outburst by Christi, mean-spirited comments about West Virginia, and presence of plaintiff's coworkers at her bus stop took place during a single training session and—while offensive—simply do not raise a genuine issue of material fact that plaintiff experienced conduct rising to the level of severe and pervasive retaliatory harassment sufficient to alter the conditions of plaintiff's

employment.  In addition, as noted above, plaintiff has effectively admitted that her coworkers'

behavior at the RCCMS training was not caused by her prior EEO activity but rather by their

frustration at the fact that she was responsible for them having to complete the training.  (*See*

Pl.'s Dep., Doc. 47-1 at PAGEID 309-10, 87:24-88:9).  For the reasons discussed above,

plaintiff's other allegations, such as work product sabotage and directions from management to

other employees to "shun" her, lack the sufficient factual support that would allow a reasonable

juror to find for her on a theory of retaliatory harassment.  Defendant's motion for summary

judgment should be granted on this claim as well.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's motion for summary judgment be **GRANTED** as to plaintiff's Title VII

   retaliation claims related to her failure to be promoted to Vacancy 1 and 3;

2. Defendant's motion for summary judgment be **GRANTED** as to plaintiff's Title VII

   claim for retaliatory harassment.

Date: 11/6/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MELODY F. HENRY,                                     Case No. 1:21-cv-31
     Plaintiff,                                     Hopkins, J.
                                                    Litkovitz, M.J.

       vs.

JANET YELLEN, SECRETARY,
DEPARTMENT OF THE TREASURY
     Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within **FOURTEEN (14) DAYS** after being served with a copy thereof.  This period may be extended further by the Court on timely motion by either side for an extension of time.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).